Douglas R. PUE, an Individual on behalf of himself and all others similarly situated, Plaintiff-Appellant,

v.

Herman SILLAS, Jr., an Individual and as Director of the California Department of Motor Vehicles, et al., Defendant-Appellee.

No. 77–3412.

United States Court of Appeals, Ninth Circuit.

June 25, 1980.

---

Anne E. Steele, San Mateo, Cal., for plaintiff-appellant.

Gordon Zane, Deputy Atty. Gen., San Francisco, Cal., argued, Elizabeth Ann Coyne, Deputy Dist. Atty., Redwood City, Cal., on brief, for defendant-appellee.

Before WALLACE and SNEED, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

Pue appeals from a district court judgment abstaining from the exercise of jurisdiction and dismissing Pue's civil rights action against officers of the California Department of Motor Vehicles (DMV) and officers of the counties of San Francisco and San Mateo (government). We find that the district judge abused his discretion in ordering abstention in this case, and we reverse.

I.

Pue owned an automobile registered in California in his own name. In April 1974

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

he allegedly sold it to Stanley Travis,[1] who failed to register it. Between April 12, 1974, and January 21, 1977, police ticketed the automobile on many occasions for parking violations in the city and county of San Francisco. Because Travis did not register the car, the citations were all charged to Pue. Nevertheless, because Travis had exclusive possession of the car, Pue did not have notice of any of the tickets placed on the vehicle's windshield.

Sometime before January 21, 1977, the Clerk of the San Francisco Municipal Court issued at least four "Notice[s] of Intent to Issue Warrant" in Pue's name. The notices were all sent to Pue's address listed on the DMV's registration records for the automobile. Pue asserts that he did not receive any of the notices, because he moved several times between April 1974 and January 1977, and, he contends, the post office did not forward the notices to his new addresses. On the evening of January 21, 1977, Pue was stopped for a traffic violation by officers of the police department in Foster City, California. While Pue was detained, the officers ran a routine check and learned of four outstanding arrest warrants. Even though Pue offered to explain that he no longer owned the car, he was arrested, handcuffed, and taken to the Foster City Police Department. He was held there until removed to the San Mateo County Jail, where he was searched, stripped, booked, fingerprinted, photographed, and incarcerated.

Pue brought this class action, pursuant to 42 U.S.C. §§ 1983, and 1985, 28 U.S.C.A. § 1343 for money damages, and declaratory and injunctive relief. Pue asserts that the statutory and administrative scheme under which he was incarcerated for someone else's criminal acts, about which he had no notice and over which he had no control, violates the United States and California Constitutions. He alleges specifically that Cal.Veh.Code § 41102 [2] (which provides that proof that a vehicle is illegally parked, plus proof that the defendant was the vehicle's registered owner, constitutes prima facie evidence that the defendant violated the Vehicle Code) raises a presumption of guilt which is unconstitutional under both constitutions. Furthermore, Pue alleges that section 41103 [3] (which sets forth the procedures

---

1. For the purposes of this appeal, we take the allegations in Pue's complaint as true.

2. Cal.Veh.Code § 41102 (West Supp. 1979) states in part:

§ 41102. Unattended vehicle; prima facie evidence

(a) In any prosecution against the registered owner of a motor vehicle charging a violation of any regulation governing the standing or parking of a vehicle under this code or any ordinance enacted by local authorities, proof by the people of the State of California that the particular vehicle described in the complaint was parked in violation of any provision of this code or such ordinance, together with proof that the defendant named in the complaint was at the time of parking the registered owner of the vehicle, shall constitute prima facie evidence that the registered owner of the vehicle was the person who parked or placed the vehicle at the point where, and for the time during which, the violation occurred, but for the purposes of this subdivision proof that a person is the registered owner of a vehicle is not prima facie evidence that the registered owner has violated any other provision of law. . . .
The above provisions shall apply only when the procedure required by Section 41103 is complied with.

3. Cal.Veh.Code § 41103 states:

§ 41103. Parking violation; notice procedure
The method of giving notice for the purposes of the provisions of Section 41102 is as follows:

(1) During the time of the violation a notice thereof shall be securely attached to the vehicle setting forth the violation, including reference to the section of this code or of such ordinance so violated, the approximate time thereof, and the location where such violation occurred and fixing a time and place for appearance by the registered owner or the lessee or renter in answer to such notice.
Such notice shall be attached to such vehicle either on the steering post or front door handle thereof or in such other conspicuous place upon the vehicle as to be easily observed by the person in charge of such vehicle upon his return thereto.

(2) Before any notice of noncompliance may be forwarded to the department under Section 41103.5 or any warrant for the arrest of a resident of this state may be issued following the filing of a complaint charging

for notifying defendants of Vehicle Code violations covered by section 41102, and of outstanding arrest warrants for such violations) violates the due process provisions of both constitutions.

## II.

The district judge abstained on the basis that the federal constitutional issues raised by Pue "might be mooted or presented in a different posture by a state court determination of pertinent state law." Deferral to state court on this basis is generally called *Pullman* abstention, after the landmark

such a violation, a notice of the violation shall be given to the person so charged. Such notice shall contain the information required in paragraph (1) and shall also inform such registered owner or the lessee or renter that unless he appears in the court designated in such notice within 10 days after service of such notice and answers such charge, or completes and files an affidavit of nonownership, the renewal of his registration is contingent upon his compliance with the notice of violation and that, failing such compliance, a warrant or citation to appear may be issued against him.

Such notice shall contain or be accompanied by an affidavit of nonownership. In addition to any other required information, such notice shall also provide information as to what constitutes nonownership, information as to the effect of executing such affidavit, and instructions for mailing or returning the affidavit to the court. Upon receipt of evidence satisfactory to the court that the person charged with violating Section 41102 has made a bona fide sale or transfer of the vehicle and has delivered possession thereof to the purchaser prior to the date of the alleged violation, the court shall obtain verification from the department that the person charged has complied with the requirements of subdivision (a) or (b) of Section 5602, and, if the person has complied with subdivision (a) or (b) of Section 5602, the charges against the person under Section 41102 shall be dismissed.

Such notice shall be given, either by personal delivery thereof to such owner, lessee or renter, or by deposit in the United States mail of an envelope with postage prepaid, which envelope shall contain such notice and shall be addressed to such owner, lessee or renter at his address as shown by the records of the department or the leasing or renting agency. The giving of notice by personal delivery is complete upon delivery of a copy of such notice to such person. The giving of notice by mail is complete upon the expira-

case in which it was first employed, *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[4] The district judge observed that few California courts have interpreted sections 41102 and 41103 of the Vehicle Code, and that no California case has considered the validity of the statutory presumption in section 41102 in light of recent Supreme Court decisions relating to the use of presumptions in criminal prosecutions. He further stated that no California court has considered the validity of the notice procedure in section 41103. We must consider whether these factors justify abstention in this case.

tion of 10 days after the deposit of such notice.

Proof of giving such notice may be made by the certificate of any traffic or police officer or affidavit of any person over 18 years of age naming the person to whom such notice was given and specifying the time, place and manner of the giving thereof.

(3) Before any warrant for the arrest of a nonresident of this state may be issued following the filing of a complaint charging such a violation, a notice of the violation shall be given to the person so charged. Such notice shall contain the information required in paragraph (1) and shall also inform such registered owner or the lessee or renter that unless he appears in the court to be designated in such notice within 10 days after service of such notice and answers such charge, or completes and files an affidavit of nonownership, a warrant or citation to appear will be issued against him.

4. The district court cited only *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in support of its decision to abstain. We take the citation to *Colorado River* to refer only to the Supreme Court's summation there of the *Pullman* and other abstention doctrines, *see id.* at 813–17, 96 S.Ct. at 1244–46. The Court in *Colorado River* specifically held that *Pullman*-type abstention was inappropriate there because *Colorado River* presented no federal constitutional question to be avoided. *Id.* at 814, 96 S.Ct. at 1244. We have recently analyzed the "wise judicial administration" rationale of the *Colorado River* decision, 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)), and observed that abstention under that principle is especially undesirable when a federal hearing is sought on a section 1983 claim. *See Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1979).

■ The decision to abstain "involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964); *see Railroad Comm'n v. Pullman Co., supra*, 312 U.S. at 500, 61 S.Ct. at 645. Thus, "[t]he test we apply in reviewing district court abstention decisions is whether there has been an abuse of discretion." *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 839 (9th Cir. 1979); *Sederquist v. City of Tiburon*, 590 F.2d 278, 281 n.5, 283 (9th Cir. 1978); *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1095 (9th Cir. 1976). A reviewing court will find an abuse of discretion only when there is " 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976) (*quoting States S.S. Co. v. Philippine Air Lines*, 426 F.2d 803, 804 (9th Cir. 1970) and *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954)). *See also Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("a judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision").

Discretion, however, must be exercised within such limits as the applicable law prescribes. These limits may be broad or narrow, general or specific. With respect to abstention the limits tend toward the narrow and the specific. Thus the Supreme Court has stated that the doctrine of abstention

is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). *See Babbitt v. United*

*Farm Workers Nat'l Union*, 442 U.S. 289, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979); *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973); *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972); *Zwickler v. Koota*, 389 U.S. 241, 248–49, 88 S.Ct. 391, 395–96, 19 L.Ed.2d 444 (1967). Our circuit has identified three conditions which, when conjoined, present the exceptional circumstances required for *Pullman* abstention:

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.

*Canton v. Spokane School Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974) (footnote omitted) (*quoting Railroad Comm'n v. Pullman Co., supra*, 312 U.S. at 498, 61 S.Ct. at 644).

■ It is especially crucial that the third criterion—an uncertain issue of state law—be satisfied. The Supreme Court has said:

"The paradigm of the 'special circumstances' that make abstention appropriate is a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question." *Kusper v. Pontikes, supra*, [414 U.S.] at 54, 94 S.Ct., at 306; *see Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967); *Harrison v. NAACP*, 360 U.S. 167, 176–177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959); *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Of course, the abstention doctrine "comtemplates that deference to state court adjudication only be made where the issue of state law is uncertain." Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14

L.Ed.2d 50 (1965). But when the state statute at issue is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question," *id.,* at 535, 85 S.Ct., at 1182, abstention may be required "in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication," *id.* at 534, 85 S.Ct., at 1182.

*Babbitt v. United Farm Workers Nat'l Union, supra,* 99 S.Ct. at 2313 (emphasis supplied). The assumption which justifies abstention is that a federal court's erroneous determination of a state law issue may result in premature or unnecessary constitutional adjudication, and unwarranted interference with state programs and statutes. But when the state law issues are crystal clear, the minimal risk of erroneous determination does not justify the "exceptional" step of abstaining. Because we find that there are no doubtful state law issues in this case, we hold that the district judge's decision to abstain was an abuse of discretion.[5]

The challenged statutes are perfectly clear. Vehicle Code § 41102 quite plainly establishes that evidence that a defendant is the registered owner of a vehicle constitutes prima facie evidence that the defendant is guilty of violating parking regulations when the vehicle is ticketed. Section 41103 explicitly delineates the notice procedures which Pue challenges. While the government urges that the general notice provisions of Cal.Veh.Code §§ 23 or 24 must be read together with section 41103, and that this creates an ambiguity regarding state notice procedures, we do not see that sections 23 and 24 have any possible impact on the state law questions of this case. Nor, even if applicable, would either statute affect the federal constitutional questions involving the presumption or the issuance of a warrant without actual notice. The government points to no other ambiguities in the statutory language.

The government contends, however, that because Pue challenges these statutes under both the California and Federal Constitutions, we should abstain to let California courts determine the uncertain issue whether the statutes violate the due process clause of the California Constitution. Cal. Const., art. 1, § 7 (West Supp. 1979). In *Newport Investments, Inc. v. City of Laguna Beach,* 564 F.2d 893 (9th Cir. 1977) (per curiam), we approved a district court abstention order where the plaintiff alleged that the state had inversely condemned his property in violation of the California and Federal Constitutions. We stated:

> The District Court . . . exercised its discretion in the precise manner that we approved in *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir. 1976), aff'g 390 F.Supp. 1004 (C.D. Cal. 1975) . . . . We note, additionally, that since some of the appellant's claims were predicated on some of the California Constitution's "mirror image" provisions of the Federal Constitution, it was particularly appropriate that the California courts be afforded the initial opportunity of interpreting the constitution of their own state in relation to the appellant's complaint.

*Id.* at 894. The second sentence of the quoted language does lend support to the government's argument. Taking the entire quoted language into consideration, however, a persuasive argument can be made that the sentence should be characterized as dictum.

We have recently expressed concern about the dictum in *Newport Investments* concerning the relevance of mirror-image state constitutional claims. In *Santa Fe Land Improvement Co. v. City of Chula Vista, supra,* 596 F.2d at 840 n. 3, we observed:

> Unfortunately, *Newport Investments* did not cite an earlier case, *Stephens v.*

---

**5.** Because there is no doubtful issue of state law, we need not consider whether the other requirements for abstention pursuant to *Can-*

ton v. Spokane School Dist. No. 81, supra, 498 F.2d at 845, have been met.

*Tielsch*, 502 F.2d 1360, 1360–62 (9th Cir. 1974), in which we indicated that abstention was inappropriate where state and federal provisions simply "mirrored" one another. *Newport Investments* relied only upon *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), but the Alaskan provisions involved in that case, rather than mirroring the Fourteenth Amendment of the Federal Constitution, concerned Alaska's "unique" fish resources, *id.* at 87, 90 S.Ct. 788.

*Stephens v. Tielsch* is particularly apposite to the case before us, because it involved a similar civil rights suit: a challenge to an unambiguous Seattle, Washington vehicle code provision which permitted the city to assess charges for the towing of illegally parked vehicles without providing a hearing. Stephens challenged the lack of a hearing on both state and federal constitutional due process grounds. In reversing the district court's decision to abstain, we stated:

> In the type of case we have here, a rule requiring abstention would seriously undermine the remedy afforded by the civil rights acts. Since most states have both some form of due process clause and some form of equal protection clause, abstention would be necessary, or at least within the power of the district judge, in nearly every civil rights action. Consequently, litigants' access to a federal forum would be significantly delayed. That could endanger the very effectiveness of the civil rights jurisdiction.

*Stephens v. Tielsch, supra*, 502 F.2d at 1362 (9th Cir. 1974). The *Stephens* case rather clearly rejects the government's contention that the presence of a due process claim under the state constitution supports abstention.

Nor are we left without guidance from the Supreme Court. It also has taken a position on the mirror-image issue that requires that we reject the government's position. On at least five occasions the Court has considered the effect of relevant state constitutional provisions upon a federal court's decision whether to abstain. *See*

*Examining Board of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 597–98, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976); *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 82–89, 95 S.Ct. 870, 874–78, 43 L.Ed.2d 32 (1975); *Askew v. Hargrave*, 401 U.S. 476, 478, 91 S.Ct. 856, 857, 28 L.Ed.2d 196 (1971) (per curiam); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Reetz v. Bozanich*, 397 U.S. 82, 86–87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970). The sum of the teachings of those cases is best expressed by the Court's statement in *Harris County* that

> [i]n *Wisconsin v. Constantineau*, 400 U.S. 433 [91 S.Ct. 507, 27 L.Ed.2d 515] (1971), we declined to order abstention where the federal due process claim was not complicated by an unresolved state-law question, even though the plaintiffs might have sought relief under a similar provision of the state constitution. But where the challenged statute is part of an integrated scheme of related constitutional provisions, statutes, and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts, we have regularly required the district courts to abstain.

420 U.S. at 84 n. 8, 95 S.Ct. at 876 n. 8. The Court reaffirmed the distinction drawn in *Harris County*, between state constitutional provisions which are integrally related to the challenged state statutory scheme and those which simply mirror the federal constitution, in *Examining Board of Eng'rs, Architects & Surveyors v. Flores de Otero, supra*, 426 U.S. at 598, 96 S.Ct. at 2279. De Otero, a non-citizen of the United States, challenged Puerto Rico's statutory restriction of engineering licenses to United States citizens. The challenged statute was itself unambiguous. *Id.* at 598 n. 29, 96 S.Ct. at 2279 n. 29. Puerto Rico contended, however, that the three-judge district court should have abstained in favor of a ruling by the commonwealth courts on the validity of the citizenship requirement in light of the equal protection provisions of the Puerto Rico Constitution. The Court rejected this contention, citing the distinction drawn in *Harris County*. The Court remarked

that "to hold that abstention is required because [the licensing statute] might conflict with the cited broad and sweeping constitutional provisions, would convert abstention from an exception into a general rule." *Id.* at 598, 96 S.Ct. at 2279.

█ The Court's conclusion that mirror-image state constitutional provisions do not justify abstention follows clearly from established abstention policies. By abstention, federal courts seek to avoid erroneous determinations of state law, which may cause unnecessary constitutional adjudication. When a state constitutional provision is inextricably related to the interpretation of state law, logic requires that the state constitutional provision be analyzed prior to reaching or framing any federal constitutional issues that depend upon the state law's meaning. A determination of state law is thus requisite, and abstention avoids the risk of error. In contrast, when the state constitutional provision merely mirrors the federal constitution, its interpretation neither logically precedes nor governs the federal question. If the statutory scheme itself is clear, no uncertain state law need be confronted.

█ It is true, of course, that abstention in deference to state court application of mirror-image constitutional provisions would avoid many federal constitutional questions. But, as we observed in *Stephens*, requiring abstention whenever state action might violate both state and federal constitutions would convert abstention in civil rights cases from an exception into a general rule, since most states have constitutional provisions that mirror the due process and equal protection clauses of the federal constitution. *See Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, supra*, 426 U.S. at 598, 96 S.Ct. at 2279; *Stephens v. Tielsch, supra*, 502 F.2d at 1362. The Court has expressly held that state remedies supplement, but do not supplant, federal remedies under section 1983. *McNeese v. Board of Educ.*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A general rule of abstention based on state constitutional provisions would violate this important and well-established principle.

In light of the Supreme Court's apparent position on the mirror-image issue,[6] and our own determination that the existence of a mirror-image state constitutional issue does not implicate the policies which justify abstention, we hold that the approach espoused in *Stephens v. Tielsch, supra*, is preferable to that suggested by the dictum in *Newport Investments.*

### III.

Because the state statutes specifically challenged in this case are crystal clear, and the presence of a mirror-image state constitutional provision does not provide a basis for abstention, we find that the third *Canton* criterion—lack of clarity in state law—is unsatisfied in this case. We hold, therefore, that the district judge abused his discretion in abstaining. The order dismissing the action is reversed.[7]

### REVERSED AND REMANDED.

---

6. The Supreme Court's conclusion in *Harris County* and *de Otero* that the presence of a claim under a state constitutional provision which mirrors a federal provision does not warrant abstention is shared by many of our sister circuits, and those district courts which have considered the question. *See Pollard v. Cockrell*, 578 F.2d 1002, 1010 (5th Cir. 1978); *Herald Co. v. McNeal*, 553 F.2d 1125, 1130 n. 8 (8th Cir. 1977) (dictum); *Connecticut State Fed'n of Teachers v. Board of Educ. Members*, 538 F.2d 471, 485 (2d Cir. 1976) (dictum); *Nehring v. Ariyoshi*, 443 F.Supp. 228, 232–34 (D. Haw. 1977); *Lendall v. Cook*, 432 F.Supp. 971, 975

(E.D. Ark. 1977) (mem.); *Donohoe Const. Co. v. Maryland-Nat'l Capital Park and Planning Comm'n*, 398 F.Supp. 21, 24–30 (D. Md. 1975). *See also White v. Edgar*, 320 A.2d 668, 674–84 (Me.1974); 1A Moore's Federal Practice '' 0.203[1], at 2109–10 (2d ed. 1979); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4242, at 462–64 (1978).

7. Even if *Pullman* abstention had been proper, it was error to dismiss the action rather than merely to dismiss the complaint and retain jurisdiction. *See Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841–42 (1979).