**Mr. and Mrs. Ardmore CANTON et al., Plaintiffs-Appellants,**

v.

**SPOKANE SCHOOL DISTRICT #81, a public corporation, et al., Defendants-Appellees.**

**No. 72–1250.**

United States Court of Appeals, Ninth Circuit.

May 13, 1974.

---

Douglas D. Lambarth (argued), Spokane, Wash., for plaintiffs-appellants.

Donald C. Brockett, Pros. Atty., Emmett J. Shaerer, Deputy Pros. Atty., Spokane, Wash., for defendants-appellees.

Robert W. Winston, Jr. (argued), of Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash.,

Alexandra Harmon, Seattle, Wash., for amicus curiae.

## OPINION

Before MERRILL and TRASK, Circuit Judges, and JAMESON,[*] District Judge.

MERRILL, Circuit Judge:

Mr. and Mrs. Canton and other named plaintiffs brought this action on their own behalf, on behalf of their children, and on behalf of a class described in the margin.[1] They allege that certain "policies and practices" of the defendant school district and its officials of "charging fees [2] as an incident of par-

[*] Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The class which the named plaintiffs seek to represent includes all parents of children attending Spokane School District No. 81 schools whose children have been charged fees "as an incident of their attendance and participation in the total school program." Two "sub-classes" are also said to be represented by these same plaintiffs: (1) "Parents whose children have been penalized because of their failure to pay fees and who fear their children will be penalized in the future for failure to pay fees"; (2) "persons who are financially unable to pay the fees and who as a result thereof are deprived of the full benefits of the total school program."

2. The system of fees complained of is described in the complaint in some detail. It is alleged that the following fees are charged at all the District's schools:

High schools:

| | |
|---|---|
| Science | $3.00 per year |
| Art | $2.00 per semester |
| Home Economics | $1.00 per semester |
| Industrial Arts | $1.00 per semester, plus charges for individual project costs |
| Physical Education | $3.00 per year (towel fee) |

Junior high schools:

| | |
|---|---|
| Art | $1.00 per semester |
| Home Economics | $2.00 per year (foods) |
| Industrial Arts | $2.00 per semester (for basic instructional materials) |
| Physical Education | $3.00 per year (towel fee) |

In addition to these "uniform" fees, charged throughout the District, other fees are allegedly levied by each individual school. We will not reproduce all the schedules here; the following is typical (Rogers High School):

| | |
|---|---|
| lock rental | $ .25 per year |
| gym lock rental | $ .25 per year |
| accident insurance | $4.00 per year |
| school paper | $1.50 per year |
| activity ticket book | $6.50 per year |
| Boys' Federation | $ .25 per year |
| Girls' League | $ .25 per year |
| athletic insurance | $10.00 per year, football or wrestling $3.50, baseball, basketball, track or cross country |
| Industrial Arts | Students must purchase materials for projects (which become their property) |

ticipation in the total school program, and of penalizing students who do not pay the fees" deny them and members of their class rights secured by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983,[3] and by Articles IX and XXVI of the Constitution of the State of Washington and certain Washington statutes providing for public education. Damages, an injunction, and declaratory relief are asked.

It is to be noted that plaintiffs do not complain only of the fact that fees are charged. That is, they do not rest on the theory that the state cannot exact a price for the benefits involved, although that is one argument they present. In addition they complain of concomitant noneconomic harms which this particular system of fees, in the public school setting, has visited upon the children of their class. They allege:

> "In addition to charging the fees, defendants have penalized children who do not pay. The penalties include withholding or reducing grades, inflicting physical punishment upon students, as well as causing students serious, direct and grave humiliation and furthermore threatening them with such actions."

It is alleged that plaintiffs' children "have been frustrated and humiliated by being singled out by reason of their inability to pay the fees." And, further:

> "The children of plaintiffs and the sub-class represented thereby have suffered direct, additional emotional and mental disturbance, degradation, embarrassment and humiliation because of the treatment accorded them by the penalizations thrust upon said children by defendants."

Defendants responded to this complaint with a motion to dismiss, "because of lack of jurisdiction by this Court over the subject matter; [4] lack of jurisdiction over the persons of the defendants; insufficiency of service of process; and, failure to state a claim upon which relief can be granted." Following oral argument this motion was granted. The objections to the sufficiency of process and personal jurisdiction relate only to the defendant school principals and their spouses, who apparently were not served at all. The dismissal as to them on this ground is not questioned on this appeal.

In its written order of dismissal the district court based its ruling solely on "the doctrine of abstention." However, it is apparent that substantial reliance was also placed upon a theory entirely distinct from the doctrine ordinarily referred to as "abstention": that in order to recover here plaintiffs must have exhausted state judicial and administrative remedies. For a general description of these two doctrines, see H. Hart and H. Wechsler, The Federal Courts and the Federal System 980–1009 (2d ed. P. Bator, P. Mishkin, D. Shapiro and H. Wechsler 1973) [hereinafter cited as Bator, et al.]; C. Wright, Handbook of the Law of Federal Courts §§ 49, 52 (2d ed. 1970). We deal with both grounds.[5]

---

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. 28 U.S.C. § 1343(3) unquestionably gave the district court jurisdiction over this § 1983 action.

5. We reject the suggestion that dismissal of the action could be supported on the ground of failure to state a claim, which, as we have noted, was one of the grounds on which the motion to dismiss was based. The contention of appellants that their children have a cognizable, constitutional right not to be subjected to the kinds of harms and penalizations which are alleged in our view is sufficient to withstand a motion to dismiss.

### 1. *Exhaustion*

The question here is whether state or local law provides remedies for plaintiffs' alleged injuries which should be exhausted before resort is had to the federal forum.

Defendants point to a resolution allegedly enacted by the Board of Directors of School District No. 81 on June 10, 1959, and in effect at all relevant times, which provides in part:

> "*Registration Fees—Collection of Monies at Junior and Senior High School Level*
> * * *
> 2. Students who are unable to pay registration-day fees shall be spared embarrassment. All such cases are to be referred to the School Administration, which is authorized to issue waivers to deserving students.
> 3. Whenever possible, such waivers shall include student body privileges as well as privileges and rights extended by the Board of Directors."

Defendants point also to Washington statutes which provide for judicial review of actions of school boards and officials at the behest of aggrieved persons. *See* R.C.W. ch. 28A.88. They note that plaintiffs neither allege nor offer to show that they have sought either state court review of School District No. 81's policies or waiver, pursuant to the resolution set out above, of any or all fees of which they complain in this action.

It is well established that state judicial remedies need not be exhausted or invoked to perfect a federal cause of action under the Civil Rights Act, § 1983. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

The Supreme Court has never said that state *administrative* remedies need not under any circumstances be exhausted as a prerequisite to an action under § 1983. Some authorities suggest that such a blanket rule can be inferred from the line of cases following McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), particularly the per curiam opinion in Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (citing *McNeese* for the proposition that " 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy' " (brackets in original)).[6] *See* Bator, et al., *supra*, at 983–985; C. Wright, *supra*, § 49, at 187 n. 6; Note, Exhaustion of State Remedies Under the Civil Rights Act, 68 Colum.L.Rev. 1201, 1208 (1968). This court has not gone so far. Toney v. Reagan, 467 F.2d 953, 956–957 (9th Cir. 1972), cert. denied, 409 U.S. 1130, 93 S.Ct. 1951, 35 L.Ed.2d 263 (1973). *Cf.* Eisen v. Eastman, 421 F.2d 560, 567–569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Nevertheless we have said that *McNeese, Houghton* and *Damico* do establish that if what is sought is "relief from, or compensation for, a deprivation of civil rights which had already occurred," rather than merely "forestalling a threatened future deprivation of civil rights," no exhaustion of state administrative remedies is required. Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969). Plaintiffs here are not seeking merely to "forestall * * * a threatened future deprivation of civil rights," but are also seeking "relief from, or compensation for, a deprivation of civil rights which ha[s] already occurred.".

Finally, Whitner v. Davis holds that in any event exhaustion is not required unless the administrative remedy

---

6. Other cases in this line include Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) ; Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) ; Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) ; King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

is fully adequate to obviate the federal claims; and the adequacy of the remedy cannot be presumed but must appear from the record. 410 F.2d at 29. It is not demonstrated in the record that this administrative remedy—waiver by the "School Administration"—would be adequate to obviate the constitutional claims presented. On the contrary, according to the as yet uncontroverted allegations of the complaint, whatever procedures may exist pursuant to this resolution for waiver of fees by the school administrators have proven grossly inadequate.[7]

## 2. *Abstention*

■■ The question here is whether a doubtful issue of state or local law is presented, resolution of which in the state courts could make decision upon the federal constitutional claim unnecessary.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

7. Lurking in the arguments of defendants is the implication that as to this resolution we are faced not so much with a question of exhaustion of remedies as with the failure of plaintiffs to show injury and state a claim until they have shown failure of the Board to grant waivers. The effect of this resolution in the facts of this case, however, is a disputed issue and is hardly a proper subject for summary disposition. The manner in which it has been implemented and carried out remains to be ascertained.

8. Other "exceptional circumstances" justifying abstention have been recognized in rare cases not presenting all the *Pullman* elements. These cases have comprised two categories: (1) "cases involving possible disruption of complex state administrative processes, see, *e. g.*, Alabama Public Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 [(1951)]; Bur-

Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Ordinarily the "exceptional circumstances" must include all the basic elements of the leading case, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 498–499, 61 S.Ct. 643, 85 L.Ed. 971 (1941):

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.[8]

With regard to elements (2) and (3), it is crucial that the uncertainty in the state law be such that construction of it by the state courts might obviate, or at least delimit, decision of the federal (constitutional) question, Baggett v. Bullitt, 377 U.S. 360, 375–378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). *See generally* Bator, et al., *supra*, at 991–992.

■ While it has been held that abstention is not necessarily improper in a civil rights case (where jurisdiction is founded on 28 U.S.C. § 1343), Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), we agree with the Second Circuit that

ford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 [(1943)] * * *"; (2) diversity cases involving no federal question at all and turning on questions such as state statutory eminent domain, *e. g.*, Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), where abstention is justified "in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a manner close to the political interests of a State," 360 U.S. at 29. Zwickler v. Koota, 389 U.S. 241, 249 n. 11, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). *See also* Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 189–190, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Bator, et al., *supra*, at 985–1005; C. Wright, *supra*, § 52, at 199–204. Clearly this case falls in neither category.

" * * * it is reasonable to conclude that cases involving vital questions of civil rights are the least likely candidates for absention * * *. Indeed, the objectives of the Civil Rights Act would be defeated if we decided that this federal claim grounded on an alleged violation of the federal constitution would have to stagnate in the federal court until some nebulous or nonexistent remedy was pursued like a will-o'-the-wisp in the state court."

Wright v. McMann, 387 F.2d 519, 525 (2d Cir. 1967).

█ Applying these principles to the case at bar, we conclude that abstention was not warranted. It does not appear that there is a doubtful issue of state law which, if authoritatively resolved by the state courts, would dispose of the constitutional claims presented. R.C.W. § 28A.59.180(9) provides that a board of directors of a school district "of the first class" shall have the power "[t]o provide free textbooks and supplies for all children attending school, when so ordered by a vote of the electors; or if the free textbooks are not voted by the electors, to provide books for the children of indigent parents * * *." In Hand v. School District No. 1, 118 Wash. 439, 203 P. 940 (1922), the Supreme Court of Washington interpreted this section to mean that the provision of free books is mandatory when the electors have voted to provide them, and discretionary with the school board otherwise. Assuming that Spokane School District No. 81 is a district "of the first class," we note, first, that the defendants themselves have pointed out in their brief that there is no indication in the record that this district's electors have voted to make mandatory the provision of "free textbooks and supplies." More importantly, there is no indication that this term "textbooks and supplies" would possibly be construed to encompass all the benefits which the complaint alleges are now subject to fees attacked as unconstitutional. We are referred to no decision of any Washington court which suggests such an interpretation. The best evidence we are shown of the application of Washington law to the system of fees at issue consists of two opinions of the Attorney General of the state, one issued subsequent to the trial of this case. AGO 1973 No. 11 (May 10, 1973); AGO 65–66 No. 113 (October 13, 1966). According to the law stated in the 1973 opinion, it appears that perhaps *some* of the fees complained of might be regarded by Washington as unlawful, at least in a district whose electors had voted for free "textbooks and supplies." Other fees complained of, however, would clearly not be so regarded, according to the state law as set forth by the Attorney General.

Hence, it cannot be said that a decision by a Washington court based on Washington law alone could be expected to dispose of the federal constitutional claims plaintiffs present; that "constitutional adjudication plainly can be avoided [because] a definitive ruling on the state issue would terminate the controversy." Railroad Commission of Texas v. Pullman Co., *supra*, 312 U.S. at 498. Nor can we on any other basis say that an "order to the parties to repair to the state court would clearly serve an important countervailing interest." Allegheny County v. Frank Mashuda Co., *supra*, 360 U.S. at 189. It would likely serve no interest at all.[9]

9. The three cases cited by the district court in its order are inapposite. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L. Ed. 1424 (1943), has been identified by more recent decisions as representing the standard to be applied "when the exercise of jurisdiction by the federal court would disrupt a state administrative process." Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *accord*, Zwickler v. Koota, 389 U.S. 241, 249 n. 11, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (*Burford* was a case "involving possible disruption of complex state administrative processes"). The state administrative regulations there challenged, relating to oil and gas operations, were found to "clearly involve basic problems of Texas policy"; the Court concluded that it "should leave these problems of Texas law to the state court

We conclude that neither ground on which the district court acted can support dismissal of the action.

Reversed and remanded for further proceedings.

---

where each may be handled as 'one more item in a continuous series of adjustments.'" 319 U.S. at 332. No such delicate, ongoing administrative program is involved here.

Detroit Edison Co. v. East China Township School District No. 3, 378 F.2d 225 (6th Cir.), cert. denied, 389 U.S. 932, 88 S. Ct. 296, 19 L.Ed.2d 284 (1967), rested in part, at least, on the Tax Injunction Act, 28 U.S.C. § 1341, rather than on the judicially developed doctrine of abstention. To the extent that it rested upon the latter, the court found that the state law issues were, as in *Pullman,* potentially dispositive. 378 F.2d at 230.

Schwartz v. Galveston Independent School District, 309 F.Supp. 1034 (S.D.Tex.1970), has been at least thrice repudiated by the Court of Appeals for its own circuit. Hobbs

v. Thompson, 448 F.2d 456, 461 n. 11 (5th Cir. 1971); Moreno v. Henckel, 431 F.2d 1299, 1303 n. 9 (5th Cir. 1970); Hall v. Garson, 430 F.2d 430, 436–437 (5th Cir. 1970) (Brown, C. J.).