Texaco, Inc. *v.* Commissioner of Transportation

| | | |
|---|---|---|
| Superior Court | Fairfield County<br>at Bridgeport | File No. 158324 |

Joseph J. Rotella *v.* Texaco, Inc.

| | | |
|---|---|---|
| Superior Court | Fairfield County<br>at Bridgeport | File No. 161526 |

Memorandum filed September 2, 1977

*Flaherty & Vallerie,* for Texaco, Inc., plaintiff in the first-captioned case and defendant in the second-captioned case.

*Carl R. Ajello,* attorney general, and *Kenneth N. Tedford,* assistant attorney general, for the commissioner of transportation, defendant in the first-captioned case.

*Slavitt, Connery & Vardamis,* for Joseph J. Rotella, plaintiff in the second-captioned case.

By the Committee. These two cases were consolidated for trial. The trial terminated in a judgment by stipulation increasing the award of damages for the fee from $204,000 to $243,800, without interest, costs or appraisal fees. The cases con-

cern the value of the lessee's interest in property which has been acquired by the state through eminent domain where the lease had not expired and an option to purchase the property had not been exercised at the time of condemnation. No Connecticut case has been cited as precedent in this situation.

On February 25, 1975, Joseph J. Rotella was the owner of a parcel of land on route 7 in Danbury upon which Texaco, Inc., had erected a gasoline station under a fifteen-year lease which commenced March 1, 1960. An option to extend the lease for an additional term of ten years had been exercised on May 16, 1974. The state condemned the property on February 25, 1975. Rotella appealed and asked for a reassessment of the award under General Statutes § 13a-76. Thereafter, on August 21, 1975, Texaco, Inc., filed its own appeal, the first-captioned case, hereinafter referred to as *Texaco,* as an aggrieved party under § 13a-76. On September 5, 1975, Rotella filed the second-captioned case, hereinafter referred to as *Rotella,* against Texaco, Inc., under General Statutes § 48-21. That case was returned to Stamford rather than to Bridgeport but was subsequently transferred to Bridgeport under a memorandum of decision in which the cases were consolidated.

At the time of the taking on February 25, 1975, Texaco, Inc.'s lease had ten years and a few days to run. The lease contained an option for the lessee to purchase the property for $55,000 during the initial term of the lease or any extension of it with the right of first refusal to a bona fide offer. That option to purchase had not been exercised before the condemnation. Texaco, Inc., maintains that the option to purchase, although it was not exercised, had value which is greater than the value of the lease and that it is entitled to that amount according

to Connecticut cases which hold that just compensation where property is taken for a public use must be determined under equitable principles of fairness.

The rule for evaluating a leasehold interest in land where there is a complete taking is to be found in *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 382. That rule was followed in *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 64. "Every kind of right or interest in property which has a market value must be compensated for in condemnation proceedings." *Canterbury Realty Co.* v. *Ives,* supra, 384. A lease is a contract; *Perruccio* v. *Allen,* 156 Conn. 282, 285; which creates an interest or estate in the premises. *Branch* v. *Doane,* 17 Conn. 402, 411. An option to purchase is a contractual right which relates to an interest in land and gives the option-holder the right to buy the property. *Pigeon* v. *Hatheway,* 156 Conn. 175, 181, 183. As the option is largely for the benefit of the option-holder it should be construed with that purpose in mind. *Sinclair Refining Co.* v. *Allbritton,* 147 Tex. 468, 474; *Barnhart* v. *Stern,* 182 Wis. 197, 199.

Article first, § 11, of the Connecticut constitution, since 1818, has decreed that "[t]he property of no person shall be taken for public use, without just compensation therefor." As the lessee's option to purchase constitutes a right in property, the lessee cannot be divested of it through the medium of condemnation without just compensation. "[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." *Gentile* v. *Ives,* 159 Conn. 443, 447–48. In *Nicholson* v. *Weaver,* 194 F.2d 804, 807 (9th Cir.), cited in *Gentile,* it was held

that the lessee of property who had an option to purchase the property during the term of the lease was entitled to the market value of the property less the option price upon condemnation. In *Sholom, Inc.* v. *State Roads Commission,* 246 Md. 688, it was held that the lessee of property who had an option to buy during the initial term of a five-year lease and options to extend the lease for two additional five-year terms was entitled either to the value of the lease for the fifteen-year period or to the value of the option upon condemnation during the initial lease term.

The Supreme Court of the United States in 1973 stated that the constitutional requirement of just compensation derives as much from the basic equitable principles of fairness as it does from the technical concepts of property law. *United States* v. *Fuller,* 409 U.S. 488, 490. In 1943, the Court of Appeals for the Second Circuit decided that the right to compensation is to be determined by whether the condemnation has deprived the claimant of a valuable right rather than by whether his right can technically be called an "estate" or "interest" in the land. *United States* v. *53¼ Acres of Land,* 139 F.2d 244, 247 (2d Cir.).

Under Connecticut law, buttressed as it is by the other cases cited, the lessee, Texaco, Inc., is entitled to judgment in the *Texaco* case for the excess, if any, of the total award above the optioned purchase price. 2 Nichols, Eminent Domain (1977 Cum. Sup.) p. 20. See also *County of San Diego* v. *Miller,* 13 Cal. 3d 684, where there was an option to buy but no lease.

As indicated, the total award was $243,800. The purchase price in the option was $55,000. The lessee, Texaco, Inc., is entitled to recover the excess, or $188,800, as the value of the option. Rotella and

Texaco, Inc., however, acting by Michael H. Rudy, assistant secretary of Texaco, Inc., filed a signed stipulation in the condemnation file on April 8, 1975, authorizing the delivery of the initial award of $204,000 to Rotella's attorneys, who deposited those funds in the Woodbridge Bank and Trust Company on a certificate of deposit in the name of Abraham D. Slavitt, as trustee for the parties. The $39,800 balance of the subsequently stipulated award was directed by the judgment for deposit similarly in that bank. The interest being earned by those funds has not been disclosed in court. Texaco, Inc., is entitled to the interest earned on $149,000 from the date of the first deposit and the interest earned on $39,800, the second deposit.

Judgment is rendered in the *Texaco* case assessing the value of Texaco, Inc.'s interest in the Rotella property on the day of taking at $188,800. Rotella and Abraham D. Slavitt, trustee, are directed to pay that amount, together with the interest earned on all but $55,000 of the $243,800 deposited in the Woodbridge Bank and Trust Company, to Texaco and its attorneys.

As indicated earlier, the *Rotella* case was instituted and filed after the *Texaco* case was pending in court. Rotella filed a motion to intervene in the *Texaco* case and it was granted. Both of those cases sought the same result, the determination of the value of Texaco, Inc.'s interest in the Rotella property. That has now been decided in the judgment in the *Texaco* case.

Judgment dismissing the *Rotella* case is now rendered.