**Paul R. BECK, Plaintiff,**

v.

**STATE OF CALIFORNIA, California Coastal Commission, South Coast Regional Commission, Melvin J. Carpenter, Individually and as Executive Director of the South Coast Regional Commission, Rocelle A. Braly, Rimmon C. Fay, Margot Feuer, Ruth Galanter, James A. Hayes, Diana Keiser, Elerth Erickson, Melvin L. Nutter, Hank Doerfling, Donald E. Wilson, Individually and as members of the South Coast Regional Commission, Michael Fischer, Individually and as Executive Director of the California Coastal Commission, Naomi Schwarts, Anthony Ramos, Judith B. Rosener, Richard A. Wilson, Lois Ewen, Fred Farr, Mildred R. Benioff, Bradford W. Lundborg, Ruth Andersen, Dorrill Wright, Harriett Allen, Hank Doerfling, Individually and as members of the California Coastal Commission, Defendants.**

No. CV 79–0802–AAH (Kx).

United States District Court,
C. D. California.

Oct. 19, 1979.

Sherman L. Stacey, Santa Monica, Cal., for plaintiff.

George Deukmejian, Atty. Gen., R. H. Connett, Asst. Atty. Gen., Steven H. Kaufmann, Deputy Atty. Gen., Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER OF DISMISSAL

HAUK, District Judge.

This matter came on for hearing on May 21, 1979, before the Honorable A. Andrew Hauk, United States District Court Judge, upon Defendants' Motion to Dismiss under Rule 12 of the Federal Rules of Civil Procedure. After reviewing all the papers in support of, and in opposition to, defendants' motion and all the applicable case law, the Court herein renders its Memorandum of Decision and Order of Dismissal.

Plaintiff Paul R. Beck is an owner of real property situated along the California coastline in Malibu, California. Within the past few years the California coastline has come under strict regulation. On November 7, 1972, the People of the State of California adopted as an initiative measure the California Coastal Zone Conservation Act of 1972 (hereinafter "the 1972 Act"), former Cal.Pub.Res.Code § 27000, *et seq.* Under the 1972 Act, the California Coastal Zone Conservation Commission and six regional commissions were established and were directed to submit to the California Legislature a coastal plan for preservation, restoration and enhancement of the resources of the coastal zone. The Coastal Plan was adopted and submitted to the Legislature; in response thereto, the Legislature adopted the California Coastal Act of 1976 (hereinafter "Coastal Act"), the 1972 Act having been repealed by its own terms. Cal.Pub.Res.Code § 30000, *et seq.*

In retaining the basic framework for protecting the coastal zone that was created by the 1972 Act, the Legislature established under the Coastal Act the California Coastal Commission and six regional commissions giving such agencies the primary responsibility of implementing the provisions of the Coastal Act. Cal.Pub.Res.Code §§ 30300, 30330. Under the Coastal Act, each local government is required to formulate a local coastal plan for its area of jurisdiction within the coastal zone, with the commissions having oversight authority to approve, modify or disapprove those plans as they deem necessary to carry-out the provisions of the

Coastal Act. The Coastal Act also provides for interim development controls designed to insure the implementation of the policies of the Coastal Act pending the completion of the local coastal plans. In particular, the Coastal Act requires that prior to approving a proposed development and granting a permit, the Commission must find that the project is in conformity with the provisions of the Coastal Act and will not prejudice the ability of local governments to prepare a local coastal program that is in conformity with the provisions of the Coastal Act.

In 1973, plaintiff Beck applied under the 1972 Act for a coastal permit to construct a single-family dwelling on his real property in Malibu, California. Plaintiff's permit application was approved subject to the condition that construction of the house be commenced on or before one hundred and twenty (120) days from the effective date of approval. Later plaintiff was granted a six-month extension of time on the permit. This extended time period was allowed to run without further application being made for its extension. Thereafter, plaintiff requested a further extension of time. This request was denied and plaintiff's appeal to the State Coastal Zone Conservation Commission was also denied. On approximately August 1, 1975, plaintiff filed a petition for writ of mandamus and complaint for declaratory relief, in the Los Angeles County Superior Court, challenging the State Commission's decision. *Beck v. California Coastal Zone Conservation Commission, et al.*, LASC Case No. C 131863.

After enactment of the Coastal Act plaintiff filed a new permit application with the Regional Commission to construct a single-family residence on his real property. The Regional Commission denied that application and the State Commission declined to hear the appeal brought by plaintiff. On or about February 8, 1979, plaintiff filed his First Supplemental Petition for Writ of Mandate in his Los Angeles County Superior Court action, adding to his claims in the state court action, his challenge to this most recent administrative decision of the Regional Commission.

On March 1, 1979, plaintiff filed the instant action. He brings this action against a variety of named defendants—the State of California, the California Coastal Commission, the South Coast Regional Commission, and the Executive Directors and certain members of the two commissions—seeking monetary relief for alleged violation of his constitutional rights. In essence, plaintiff alleges that in denying his permit application to construct the residence, (1) all defendants, acting under the color of state law, have acted to deprive him of all use and enjoyment of his property in violation of the Due Process Clause of the Fourteenth Amendment; (2) the individual defendants, acting under title of state office, have thus acted under 42 U.S.C. § 1983 to deprive him of a valuable civil right; and (3) the individual defendants acting in concert with each other, have conspired under 42 U.S.C. § 1985 to deprive him of his civil rights.

Defendants herein have moved to dismiss this action based upon the following grounds:

 1. Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendants primarily base this contention on the immunities granted under the Eleventh Amendment.

 2. This court should dismiss the action in order to avoid unnecessary duplicative litigation under the doctrine set forth by the United States Supreme Court in *Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

 3. This court should dismiss or stay this action under the federal doctrine of abstention.

Each of these questions must be addressed separately to determine whether this action is to go forward.

## FAILURE TO STATE A CLAIM

Defendants assert that the relief sought by plaintiff may not be granted. Defendants primarily base this contention upon the immunities granted the states under the Eleventh Amendment. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ As stated by the United States Supreme Court in *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1973):

While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.

The rule that has evolved is that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Id.* at 665, 94 S.Ct. 1347.

■ The Court has reiterated the propriety of this rule most recently in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Here the Court did not waiver from the rule laid down in *Edelman* that in an action brought under 42 U.S.C. § 1983 a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury. *Id.* at 338, 99 S.Ct. 1139.

The instant action, as were *Edelman* and *Quern*, is an action brought under 42 U.S.C. § 1983. Plaintiff herein does not seek prospective injunctive relief; rather he seeks to recover $600,000 in damages (roughly the fair market value of his property) for the alleged deprivation of all use and enjoyment of his property. Furthermore, it is clear that the defendant State of California has not consented to this suit. Therefore, in view of *Edelman* and *Quern* this court has no alternative but to dismiss this action as against the defendant State of California.

■ The protection of the Eleventh Amendment, moreover, is not limited solely to actions naming a state as the defendant. A state agency, functioning as an arm, an alter ego, of the state cannot be sued in federal court because of the prohibition of such suits by this amendment. The Supreme Court has held that suits brought under 42 U.S.C. § 1983 and against local government units may be maintained in federal court. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 690 n.54, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The *Monell* decision, however, was limited to local government units. This limitation was reaffirmed in *Quern*. 440 U.S. at 338, 99 S.Ct. 1139. Thus state agencies are immune from suit in federal court under the Eleventh Amendment. Accordingly, defendants California Coastal Commission and South Coast Regional Commission as state agencies come within the purview of the Eleventh Amendment and dismissal must be granted in favor of these defendants.

■ The relationship of the Eleventh Amendment to the instant action as against the commissioners sued herein individually and as members of their respective commissions, presents a more difficult question. Under certain circumstances, suits may be maintained against state officials for monetary relief. When the effect and object of the suit, however, is to obtain damages from a *state* the Eleventh Amendment serves as a bar to the suit, even though a state is not named as a party to the action. Accordingly, when the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. *Edelman v. Jordan, supra*, at 415 U.S. 662–663, 94 S.Ct. 1347. Furthermore, whether a suit is one against a state is to be determined, not by the fact of the party named as a defendant on the record, but by the result of the judgment or decree which may be entered. *Minnesota v. Hitchcock*, 185 U.S. 373, 387, 46 L.Ed. 954 (1902).

■ In the instant action, it seems clear that the object and intended effect of this suit was to recover damages from the state treasury. This action, in essence, is an inverse condemnation action utilizing 42 U.S.C. § 1983 as a jurisdictional basis. Plaintiff asks for a recovery of roughly the fair market value of his property, in essence a forced sale of that property. Did plaintiff intend to proceed against each of the defendants with the end result being the commissioners and state agencies being forced into becoming co-tenants in his property? Such a result would be ludicrous. Rather the more logical answer seems to be that the object of plaintiff's suit was a recovery from the state. This would seem to follow even from the prayer of plaintiff's complaint wherein he prays for damages without specificity as to defendant.

This court, moreover, need not rely solely upon its own analysis of the facts in this action in order to decide this question. For the facts in the instant action argue more persuasively for a finding in favor of applying the Eleventh Amendment in this action than did the facts in the *Edelman* case. In the *Edelman* case, plaintiff sought relief against two former directors of the Illinois Department of Public Aid, the director of the Cook County Department of Public Aid, and the comptroller of Cook County, alleging that these state officials were administering the federal-state programs of aid in a manner inconsistent with various federal regulations and with the Fourteenth Amendment to the Constitution. *Edelman v. Jordan, supra,* 415 U.S. at 653, 94 S.Ct. 1347.

In the present action, as in *Edelman,* jurisdiction is based upon 42 U.S.C. § 1983. In the present action, as in *Edelman,* the plaintiff names as defendants state officials who have allegedly operated their agencies in a manner inconsistent with the Constitution. Unlike *Edelman* where the State of Illinois was never joined, plaintiff herein has proceeded against the State of California as well as the state officials. Unlike *Edelman,* the cause of action herein is closely analogous to the more traditional inverse condemnation action, a type of action that is traditionally maintained against the government entity. Accordingly, in view of *Edelman* and in view of the circumstances surrounding this action, the Court is left with only one conclusion, that the effect and object of this action, even as pleaded against the commissioners, is an action to recover damages from the state treasury and as such is barred by the Eleventh Amendment.

■ The last defendants to be considered are the two executive directors of the commissions. Here, however, the Court need not engage in a continued analysis of the Eleventh Amendment. As to these two defendants, plaintiff has utterly failed to state *any* facts which would give rise to a claim in favor of plaintiff and against these defendants. Accordingly, these defendants are granted dismissal from this action.

For the reasons stated above, dismissal in favor of each defendant is granted in this action. This, however, cannot end the analysis. While the plaintiff may not maintain this suit for damages, the Court is well aware that plaintiff could maintain an action in federal court, consistent with the Eleventh Amendment, to enjoin state officials to conform their future conduct to the requirements of federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus the court must decide whether to grant plaintiff leave to amend his complaint in order to seek prospective injunctive relief. To decide this question it is necessary for the Court to investigate the other issues raised by the defendants.

## AVOIDANCE OF DUPLICATIVE LITIGATION

Defendants assert that dismissal of this action is appropriate in view of the Supreme Court's decision in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendants argue that avoidance of duplicative litigation requires dismissal of this federal action in favor of state court adjudication and that these principles rest on considerations of wise ju-

dicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation. Defendants contend that since the state court action in this case was filed first by the plaintiff herein, seeking relief from the actions of the coastal commissions, and since the state action will by necessity involve substantially the same questions as the federal action, this federal action should be dismissed.

This Court, however, feels that the cases in this area do not require dismissal of the instant action. On the contrary, in view of the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, defendants' motion to dismiss to avoid duplicative litigation must be denied.

■ Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910). While there are circumstances which permit the dismissal of a federal suit due to the presence of concurrent state proceedings, these circumstances are exceptional. *Colorado River Water Cons. Dist. v. United States, supra*, 424 U.S. at 818, 96 S.Ct. 1236.

■ The instant action, however, does not involve circumstances which would place it out of the ordinary. The *Colorado River Water* case involved two actions to adjudicate respective rights to water in certain rivers and their tributaries in Colorado. An action was originally filed by the United States in federal court and another action was later filed in state court by one of the defendants in the prior federal suit. The United States was served in the state action pursuant to the authority of the McCarran Amendment, 43 U.S.C. § 666. The McCarran Amendment provides that

consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under state law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

The Supreme Court in determining that dismissal was required in the *Colorado River Water* case found the most important factor in that case to be the McCarran Amendment itself. The Court found a clear federal policy evinced by the legislation, this congressional policy being the avoidance of piecemeal adjudication of water rights in a river system. The Court found that the "consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means of achieving these goals." *Colorado River Water Cons. Dist. v. United States, supra*, 424 U.S. at 819, 96 S.Ct. at 1247.

There exists no similar legislation or congressional policy in the instant action. Actions under 42 U.S.C. § 1983 are commonly maintained in federal court and do not involve the considerations that made the McCarran Amendment necessary in the area of water rights. Thus the present action is not one which would be appropriate for dismissal under the doctrine of avoidance of duplicative litigation as espoused in *Colorado River Water*.

## ABSTENTION

The last issue raised by the defendants is whether the Court should dismiss or stay the action under either the *Pullman* or *Burford* theory of abstention.

### 1. The Pullman Doctrine

■ In order to avoid deciding a federal constitutional question prematurely or unnecessarily, the Supreme Court in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), developed a doctrine to allow a federal court to retain jurisdiction over an action, yet stay the action to allow the state

court to rule on matters of state law that may be dispositive of the action. In *Canton v. Spokane School Dist. No. 81,* 498 F.2d 840, 845 (9th Cir. 1974), the Ninth Circuit set forth the well-established standards for applying this *Pullman* abstention:

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.

After applying these criteria to the present action, the conclusion that *Pullman* abstention is appropriate, is inescapable. This action involves issues of complex land use planning. The Ninth Circuit has already held that land use planning is today a sensitive area of social policy meeting the first *Canton* requirement. *Sederquist v. City of Tiburon,* 590 F.2d 278, 281 (9th Cir. 1978); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1094 (9th Cir. 1976).

The second *Canton* requirement is also met here. As in *Santa Fe Land Imp. v. City of Chula Vista,* 596 F.2d 838 (9th Cir. 1979), plaintiff herein seeks a writ of mandamus in his state action pursuant to California Code of Civil Procedure Section 1094.5, to set aside the agency action. Plaintiff has asserted that the commissions' actions were arbitrary, oppressive, unreasonable and an unreasonable exercise of the police power, an abuse of discretion and an action in excess of its jurisdiction. In support of this claim plaintiff asserts that the commissions' decisions were not supported by the findings, that the commissions did not proceed as required by state law, and that the defendants adopted and construed regulations inconsistently with state constitutional and statutory law. If plaintiff is correct, the state courts may well provide the requested relief. Accordingly, it appears that there are state policies and questions which may obviate the need to reach federal questions and which are best left to state courts to resolve, thus meeting the second *Canton* criterion.

The third *Canton* test of doubtfulness of state resolution also militates toward abstention. To take the approach of *Sederquist v. City of Tiburon, supra,* 590 F.2d at 282, whether an agency has abused its discretion or has exceeded its jurisdiction by particular land use practices is by nature a question turning on the peculiar facts of each case in light of the many land use laws. The court does not "claim the ability to predict whether a state court would decide that the [commission] here abused its discretion . . . ." *Id.* Furthermore, the courts have not as yet decided the question of whether a permit denial pending preparation of the applicable local coastal plan in order to protect these same priceless state coastal resources is reasonable under the commissions' exercise of police power.

Accordingly, since this action satisfies the requirements of *Canton,* the *Pullman* type of abstention is appropriate. *Pullman* abstention, however does not provide for dismissal. Under this theory of abstention, jurisdiction is to be retained. The federal action is to be stayed pending adjudication of the state action.

### 2. The Burford Doctrine

 A second abstention doctrine is that a federal court should refrain from exercising its jurisdiction in order to avoid needless conflict with the administration by a state of its own affairs. This type of abstention is known as *Burford* abstention and is derived from the Supreme Court decision in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In that decision the Court held that the federal court should have dismissed the complaint in a case involving proration orders in Texas oil fields, on the ground that the issues involved a specialized aspect of a complicated regulatory system of local law, which should be left to the local administrative bodies and courts. Under this type of abstention, since adequate state court review of an administrative order based upon pre-

dominantly local factors is available, intervention of a federal court is not necessary for the protection of federal rights. *Alabama Public Service Comm. v. Southern R. Co.,* 341 U.S. 341, 349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). Important federal constitutional rights are adequately protected under this doctrine by review of the state decision in the United States Supreme Court.

In determining whether this doctrine is appropriate for the present action, the court must look to the particular facts presented here. The California coastline is a unique and valuable resource of that state. In order to protect that resource, the people of that state enacted extensive legislation providing for a complex system of regulation with state controls ultimately yielding to local control with state supervision through the local adoption and state approval of local coastal plans. The legislation provides for an interim permit procedure until those local plans are adopted and approved. The coastal acts specifically provide a system of recourse for the permit applicant and a particularized system of review. Furthermore, the California Supreme Court in *Agins v. City of Tiburon,* 23 Cal.3d 605, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), in holding that a plaintiff may not recover damages on the theory of inverse condemnation, has established a policy in the state which dictates that "taking" actions must be handled in a particularized fashion.

In view of the above, this Court feels constrained not to interfere with the local administration of local laws. In this manner, the state can be the determining agent of its own affairs and will be able to develop a coherent and cogent procedure in handling the cases arising under the coastal acts of that state. Accordingly, the Court finds that abstention under the *Burford* doctrine is appropriate in this action in order to avoid interference with state activities.

In *Burford* abstention, dismissal of the action, rather than retention of jurisdiction pending a state determination, is normally appropriate. This is not inconsistent, however, with the court retaining jurisdiction simply against the possibility that something should prevent a prompt state court determination. *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). This Court finds that the present action is one where jurisdiction should be retained in this manner, since prompt state court action is preferable.

THEREFORE, IT IS ORDERED that defendants' Motion to Dismiss be granted on grounds that:

1. As to Defendants State of California, California Coastal Commission, South Coast Regional Commission, Rocelle A. Braly, Rimmon C. Fay, Margot Feuer, Ruth Galanter, James A. Hayes, Diana Keiser, Elerth Erickson, Melvin L. Nutter, Hank Doerfling, Donald E. Wilson, Naomi Schwarts, Anthony Ramos, Judith B. Rosener, Richard A. Wilson, Lois Ewen, Fred Farr, Mildred R. Benioff, Bradford W. Lundborg, Ruth Andersen, Dorrill Wright, and Harriett Allen, the complaint fails to state a claim upon which relief can be granted since the action is essentially one which seeks monetary relief to be paid from the California State Treasury and is thus barred by the Eleventh Amendment;

2. As to Defendants Melvin J. Carpenter and Michael Fischer, the complaint fails to allege any facts or to state a claim upon which relief can be granted; and

3. Abstention is appropriate in this case under the abstention doctrines set forth in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

IT IS FURTHER ORDERED that said dismissal is granted without prejudice to plaintiff's filing of a new action in federal district court, limited to seeking prospective injunctive relief only, following final resolution of the plaintiff's pending state court action, *Paul R. Beck v. The California Coastal Zone Conservation Com., et al.,* LASC No. C 131863; and that, in the inter-

im, said dismissal without prejudice shall serve to toll the applicable statute of limitations for purposes of enabling plaintiff to file within the terms of this order any new federal court action.