WINDWARD PARTNERS, a registered Hawaii Partnership, et al., Plaintiffs-Appellants,

v.

George ARIYOSHI, Governor of the State of Hawaii, et al., Defendants-Appellees.

No. 80–4509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 22, 1982.

Decided Dec. 1, 1982.

Ronald G.S. Au, Honolulu, Hawaii, for plaintiffs-appellants.

Wesley W. Ichida, Edwin P. Watson, Michael W. Gibson, Honolulu, Hawaii, argued, for defendants-appellees; Russell N. Fukumoto, Clinton R. Ashford, Honolulu, Hawaii, on brief.

Before SCHROEDER, NELSON and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge:

Windward Partners seeks damages arising out of the purchase by the state of Hawaii, under threat of condemnation, of property on which plaintiffs held an option to purchase. The state's purchase was expressly made subject to the option. Defendants are the owner of the purchased property, her attorney, and various state officials.

Windward's complaint alleges five causes of action. Three of these causes are based in contract and are directed to property owner Marks and attorney Kay. Both compensatory and punitive damages are sought under these claims. Another cause of action is directed primarily to the state defendants and alleges deprivation of civil rights under color of state law, redressable under 42 U.S.C. § 1983 in connection with an alleged taking of appellants' option rights. The remaining cause of action

alleges a conspiracy between the governor and Marks and Kay to announce the state's purchases under threat of condemnation in order to prevent appellants from obtaining financing to exercise the option. Plaintiff alleges that the defendants are liable under section 1983 for conspiracy to deprive plaintiff of a federally protected property interest.

■ We address the conspiracy count first. There is, and can be no allegation that the object of the conspiracy was to condemn the option right. The option was not condemned. In any event, Hawaii courts have never recognized an option as a compensable property interest. However, even assuming that the option was a compensable interest, and assuming further that the private defendants and the governor conspired to make it impossible for the plaintiff to obtain financing to exercise the option in this case, there is no authority to support the proposition that an inverse condemnation occurred.

■ We have been cited to no jurisdiction which has held that such a financing opportunity is a compensable property interest. Moreover, announcement of an intent to condemn is not, in and of itself, an inverse condemnation. More direct and substantial interference with the use and enjoyment of property must be shown. *See Richmond Elks Hall Ass'n v. Richmond Development Agency,* 561 F.2d 1327, 1330–31 (9th Cir. 1977); *Thompson v. Tualatin Hills Park & Recreation Dist.,* 496 F.Supp. 530, 541–42 (D.Or.1980). *See generally,* 2 J. Sackman, *Nichols' Law of Eminent Domain* § 6.39[5] (rev. 3d ed. 1981). The conspiracy count fails to state a claim on which relief can be granted.

■ The district court also dismissed Windward's section 1983 cause of action against the state defendants for failure to state a claim. Although the district court's order does not identify the particular inadequacies of the claims, it is apparent that the court did not consider Windward's option on the subject property to be a constitutionally secured interest that was taken by the state without just compensation. We find it unnecessary to reach this issue because Windward's claims against the state defendants are barred by the eleventh amendment.

There can be no doubt that the true purpose of Windward's action is to recover money from the state treasury. Windward's failure to name the state as defendant is therefore immaterial to the state defendants' eleventh amendment immunity. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). As stated by the Court in *Ford,* "[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Id.* In spite of the fact that state officials rather than the state itself were named as defendants, it is clear that the object and intended effect of this inverse condemnation type suit was to recover damages from the state treasury and not from the various state officials personally. *See Beck v. State of California,* 479 F.Supp. 392, 396–97 (C.D.Cal.1979). It was therefore barred by the eleventh amendment as to all the state defendants.

The framing of plaintiff's claims as a § 1983 action does not change our conclusion. In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that section 1983 does not abrogate or "override" the sovereign immunity of the states under the eleventh amendment.

■ Windward does not contest the appellees' argument that the state is the real party in interest, that section 1983 does not limit the state's invocation of the eleventh amendment, and that the limitations of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907), do not apply. Windward argues instead that the state has waived its immunity by Article I, § 20 of the state constitution, which reads: "Private property shall not be taken or damaged for public use without just compensation." Wind-

ward characterizes this provision as "self-executing" and, as such, establishing the state's consent to be sued.

The state defendants correctly respond that waiver should be found "only where stated 'by the most express language or by such overwhelming implications from the [statutory] text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1361 *(quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *Quern v. Jordan,* 440 U.S. at 345, 99 S.Ct. at 1146–47. *See generally L. Tribe, American Constitutional Law* § 3–36, at 134–38 (1978). However, even assuming that the state constitutional provision is sufficiently clear to waive immunity, the provision would confer jurisdiction only upon Hawaii state courts and would not extend to the federal courts. *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–79, 66 S.Ct. 745, 747–48, 90 L.Ed. 862 (1946); *Ford Motor Co. v. Department of Treasury,* 323 U.S. at 465–66, 65 S.Ct. at 351.

Because the eleventh amendment strips us of jurisdiction to consider Windward's claims against the state defendants, we are thus unable to decide the contractual claims against the private individuals. Windward has alleged no independent federal jurisdictional grounds for those claims, and there remain no federal causes to which they may pend. *See Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976).

Affirmed.

BOOCHEVER, Circuit Judge, dissenting:

I respectfully dissent from the portion of the opinion that holds that it was not error for the District Court to dismiss the "fourth Cause of Action" for failing to state a claim. Because I believe that if Hawaii recognizes an option to purchase land as a compensable property interest, a claim has been stated under 42 U.S.C. § 1983, I would remand for the trial court to determine initially that question of state law. If the option to purchase is held to be such a property interest, the court would also have jurisdiction over the pendent state claims.

Since this appeal comes to us on a dismissal for failure to state a claim we must accept the allegations of the complaint, which we have summarized below, as true. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1309 (9th Cir.1982) (as amended). Windward secured the rights to a multi-million dollar option executed by Marks to purchase certain parcels of her land. On November 2, 1976, Windward's managing partner, for the benefit of the partnership, loaned Marks $1,000,000 to secure an extension of time to exercise the option for parcel 2, and a reduction of its purchase price to $6,000,000. The agreement provided that Marks would not transfer, assign, convey or otherwise alienate to any third party any interest in the property as long as the option was effective. In February, 1977, Gov. Ariyoshi made a public announcement that Marks had agreed to sell the land to the state under threat of condemnation. The state agreed, under that threat, to purchase parcel 2 for the $6,000,000 price previously set for Windward, with the state agreement being subject to Windward's option. No offer was ever made to Windward to compensate it for its option rights, and it was never a party to the negotiations. The announced condemnation was intended to defeat the interests of Windward. Windward, in reliance on the option agreement, expended great sums of money. The defendants Marks and Kay acted in concert with the defendant Ariyoshi to deprive plaintiffs of their civil rights under 42 U.S.C. § 1983. As a result of this action, including the announced threat of condemnation, it was impossible to secure financing and Windward was unable to exercise its option.

In effect, it is alleged that there was an agreement under color of state law to deprive Windward of its right to purchase the property. By such an agreement Marks and Kay were assured of receiving the $6,000,000 instead of having to depend on the uncertainty of whether the option would be exercised, and the state avoided

having to compensate Windward for its rights. The announced condemnation effectively constituted a taking of the option rights without compensation, constituting a deprivation of rights under the 14th and 5th Amendments under color of state law.

Assuming that the option is a property interest which required compensation, I do not think that the dismissal can be affirmed on the ground that the state's actions could not, as a matter of law, have amounted to a taking. Physical invasion of the property is not always necessary for a taking. *Richmond Elks Hall Association v. Richmond Redevelopment Agency,* 561 F.2d 1327 (9th Cir.1977).

In *Richmond Elks,* the city announced its intent to condemn within a certain period, but after six years still had not done so. The court held that a taking occurred in 1968, before Elks suffered any physical invasion of its property, because rental income was reduced by ⅔rds, insurance premiums rose, and wide publicity of the condemnation plans made loan money on the property unavailable. Although Hawaii's agreement with Mrs. Marks stated that it was subject to the option, Windward has alleged that the state's repeated announcements of its plans to take the land rendered its option unusable. Whether the practical effect of the state's actions was to destroy the value or usability of the option is a question of fact. If the value and use of the option were destroyed by the state action I believe there was a taking under *Richmond Elks.*

I agree with the majority that action against the state officials is barred by the eleventh amendment. The Supreme Court has held, however, that a state official's immunity does not protect alleged private co-conspirators. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The case concerned a judge's absolute official immunity rather than a state's eleventh amendment immunity, but the result was

that a § 1983 cause of action remained against the private parties alleged to have conspired with the judge even though the state official was immune. There is therefore a basis under § 1983 for federal jurisdiction of the claims against Mrs. Marks and her attorney, Kay.

The dismissal of the complaint against the private parties may still be affirmed, however, if the option was not a property right protected under § 1983. The nature of a property interest which may not be taken without just compensation is determined by state law. *Milens of California v. Richmond Redevelopment Agency,* 665 F.2d 906, 909 (9th Cir.1982). Neither the papers filed below nor the briefs on appeal discuss whether an unexercised option is a "property interest" under Hawaii law, and the district Judge's order does not indicate that he considered that question. Thus, the dismissal below cannot be treated as a conclusion of state law reviewable under a clearly wrong deferential standard. *E.g., Major v. Arizona State Prison,* 642 F.2d 311, 313 (9th Cir.1981); *Anderson v. Allstate Insurance Company,* 630 F.2d 677, 682 (9th Cir.1980).

There are no Hawaii cases on the question of compensation for the holder of an unexercised option.[1] The older general rule is that an unexercised option right is not a property interest. The holder is not entitled to compensation for a taking when condemnation of the land destroys the value of the option. *See* Annot., Option—Award in Condemnation, 85 A.L.R.2d 588 (1962); 27 Am.Jur.2d, *Eminent Domain* § 255 (1966 and Supp.1982). *Cf. Nicholson v. Weaver,* 194 F.2d 804 (9th Cir.1952) (unexercised option held by leaseholder was compensable property interest).

In *United States v. 3,035.73 Acres of Land,* 650 F.2d 938 (8th Cir.1981) an option to purchase standing timber was held to be a compensable property right. California and Pennsylvania have held that an option

---

1. After an option-holder has exercised the option, he is entitled to compensation in Hawaii if the land is taken for public use. *City and County of Honolulu v. Bonded Investment Co.,* 54 Haw. 385, 507 P.2d 1084, 1087 (1973). This sheds no light on the compensability of an *unexercised* option because the reason for compensation after exercise is that the optionee has become the actual owner of the land.

held by one other than a leaseholder is a compensable property interest. *County of San Diego v. Miller,* 13 Cal.3d 684, 532 P.2d 139, 119 Cal.Rptr. 491 (1975); *In Re Petition of Governor Mifflin Joint School Authority,* 401 Pa. 387, 164 A.2d 221 (1960). Several other states have discussed the strong policy reasons why an option-holder should be compensated when the state's action destroys its value but have not had to decide the question because the option-holder was also a holder of a more traditional interest in property, a lease. *Spokane School District No. 81 v. Parzybok,* 96 Wash.2d 95, 633 P.2d 1324, 1327–29 (1981); *Texaco, Inc. v. Commissioner of Transportation,* 34 Conn.Supp. 194, 383 A.2d 1060, 1062 (1977).

As the California court discussed in *Miller,* the no-compensation for options rule derives from an application of common law notions of property and the labelling of options as a "contractual interest" rather than an "interest in property". 532 P.2d at 143. More modern notions of what should be protected from uncompensated takings are grounded in considerations of fairness, rather than technical determinations of what is a "property interest." *See, American Savings and Loan v. County of Marin,* 653 F.2d 364, 372 (9th Cir.1981).

In conclusion, I would remand to the trial court to determine whether the option agreement constituted a compensable property interest. If that question is answered in the affirmative a claim has been stated under 42 U.S.C. § 1983.